DAVID H. ROBINSON *vs.* THE MANUFACTURERS' INSURANCE
COMPANY.

An insurance of " freight on board " a vessel means the same as " freight of the ves-
sel."

Insurance was effected on freight of a vessel at and from Cadiz to a port in Sicily, an l
at and from thence to her port of destination in the United States. The vessel was
lost in the Bay of Cadiz, after being ready to sail for Palermo in Sicily, having on
board a very small quantity of goods on freight, and those shipped for her port of des-
tination in the United States. The assured had chartered the vessel, except the
cabin, deck, and necessary room for the accommodation of the crew, (reserving to
the master the privilege of freight in the cabin,) from Palermo to New York, for
$ 2,500, and $ 35 *per diem* demurrage.

*Held,* that the whole freight from Cadiz to Palermo, and from Palermo to the United
States, was one entire subject of insurance ; that the valuation was not so great as to
raise a suspicion of fraud ; and therefore that the underwriters were not entitled to
have the policy opened, but were liable for a total loss.

ASSUMPSIT on a policy of insurance, dated March 12th,
1838, by which $ 5,000 were insured " on freight on board ship
Herald, at and from Cadiz to one port in Sicily, and at and from
thence to her port of destination in the United States."

The freight was valued at $ 5,000, including the premium,
which was $ 175.  The plaintiff owned the vessel, and on the
25th of November, 1837, chartered her to Chamberlin, Boon,
& Co., for a voyage from Palermo to New York, for $ 2,500,
with $ 35 *per diem* demurrage ; " excepting the cabin, the deck,
and the necessary room for accommodation of crew, &c.  The
captain to have the privilege of freight in the cabin."  The ves-
sel sailed from New York, December 3d, 1837, bound to Ca-
diz, and thence to Palermo, and thence home.  She arrived at
Cadiz January 1st, 1838, discharged her cargo there, took eight
coils of rigging, of fifty fathoms each, to be carried to New
York, and on the 24th of February, when ready for sea, and
about to sail for Palermo, was wrecked in the Bay of Cadiz.

A policy on the vessel had been previously made, viz. No-
vember 24th, 1837, by the Pacific Insurance Company, insuring
" Z. Cook, Jr. for D. H. Robinson, for whom it concerns, pay-
able to said Robinson, or order, $ 5,000 on the freight of ship
Herald at and from New York to Cadiz, and at and thence to

one port in Sicily, and at and thence to a port of discharge in the United States." This policy was cancelled on the same day that the policy now in suit was made, at which time the arrival of the vessel at Cadiz was known to the assured.

The Herald was abandoned to the defendants, April 17th, 1838. The protest was delivered to them on the 25th of May, and the survey on the 28th of May, 1838.

It appeared from the deposition of the master, that during almost all the time the Herald was at Cadiz, the weather was so rough and the sea so heavy, that lighters could not be kept along side to take out the cargo, which was not wholly discharged until the 20th of February, 1838, fifty days after the vessel arrived there. The vessel was put up for freight by the master, in pursuance of the plaintiff's orders ; and the master attributed it partly to being detained at Cadiz so long, that he did not obtain more freight for Palermo ; and *he was informed* by his agents, that some, who originally intended to send freight to Palermo, altered their minds. He could not form an estimate of the amount of freight which might have been obtained under favorable circumstances, but deposed that " it might have been five hundred dollars, or five times that amount." He also deposed, that the freight from New York to Cadiz was about one thousand dollars, which was paid in advance, except $170, which he received at Cadiz.

On the foregoing facts and testimony, the question was, whether the plaintiff should recover for a total loss, or the policy be opened on the ground of an overvaluation.

*Parsons*, for the plaintiff, argued, that within reasonable mercantile probability, the plaintiff might have valued the freight at $5,000. The policy covered the voyage from Cadiz to Palermo ; the demurrage at Palermo, which was uncertain ; the voyage from Palermo to New York ; and the freight of the deck and cabin on this last voyage. 1 Phil. Ins. (1st ed.) 345. *Alsop* v. *Commercial Ins. Co.* 1 Sumner, 468. *Dumas* v. *United States Ins. Co.* 12 S. & R. 437. *De Longuemere* v. *Phœnix Ins. Co.* 10 Johns. 127. *Wolcott* v. *Eagle Ins. Co.* 4 Pick. 429. *Shawe* v. *Felton*, 2 East, 109. *Coolidge* v. *Gloucester Ins. Co.* 15 Mass. 341.

" Freight on board," is the same as freight on goods to be put on board. But in this case, the vessel was wrecked when the policy was made. The plaintiff, nevertheless, is entitled to recover. *Horncastle* v. *Suart*, 7 East, 400. *Davidson* v. *Willasey*, 1 M. & S. 313. *Livingston* v. *Columbian Ins. Co.* 3 Johns. 49. *Truscott* v. *Christie*, 2 Brod. & Bing. 320. *Riley* v. *Hartford Ins. Co.* 2 Connect. 368.

*W. D. Sohier*, for the defendants, argued that the terms of the policy did not cover the case as exhibited by the facts. The plaintiff applied for insurance upon freight *on board*, and the defendants knew nothing except what those terms imported. The event, which satisfies these terms, never happened, except as to the coils of rigging. For loss of freight on them, the defendants are liable. An indemnity only is to be recovered by the plaintiff. The whole subject matter must be at risk, or the assured can recover only what he proves he has lost. *Clark* v. *Ocean Ins. Co.* 16 Pick. 289. *Coolidge* v. *Gloucester Ins. Co.* 15 Mass. 341.

In this case, the plaintiff sought more than an indemnity by procuring this second policy. He valued the freight from Cadiz to Palermo at the sum at which, in his first policy, he estimated the freight from New York to Cadiz. There were several voyages in this instance ; *Hughes* v. *Union Ins. Co.* 8 Wheat. 294. *Wolcott* v. *Eagle Ins. Co.* 4 Pick. 429 ; and the plaintiff never could have expected freight from Cadiz to Palermo. Demurrage is for *non user*, and ought not to be brought into the account of freight.

SHAW, C. J. Were this a common insurance on freight of ship Herald, in common form, valued at $ 5,000, on the loss proved, there would seem to be no doubt of the plaintiff's right to recover. The term freight is somewhat equivocal, and has several meanings. It is sometimes used to describe the compensation for the carriage of goods, sometimes for the hire of a vessel, and sometimes it is used in a loose sense to signify the goods or property carried. It is never, however, used in the latter sense, when intended to describe a separate subject of insurance ; but is then used in contradistinction to ship and cargo, to designate the

compensation to be paid to the ship-owner, for the use of his vessel, either for the carriage of merchandise, or for the hire of the vessel in whole or in part. It is also held, that a ship-owner may insure the profit and benefit to be derived from the employment of his own ship, for the carriage of his own goods, under the name of freight.

We are then to inquire, what is the effect of the particular words used in this policy. The words are, " 5,000 on freight on board ship Herald, at and from Cadiz to one port in Sicily, and at and from thence to her port of destination, in the United States. Freight valued at $ 5,000."

There was an inception of the risk, by *taking in* some goods at Cadiz, though a small quantity, and by commencing the voyage to Palermo in Sicily, under a charter party previously entered into, for a freight from Palermo to New York. In general, the inception of a voyage, even in ballast, from one port to another to take a cargo, pursuant to a charter party, is an inception of the voyage on which freight is to be earned, and if the vessel is lost before arriving at the first port to take in the cargo, it is a loss on freight.

Then the question is, what was intended by the words " on board." The sentence is obviously elliptical. Considering " freight " as the hire or price to be paid for the use of the vessel, " freight on board," is unmeaning. Something must be supplied. The defendants insist, that we must understand it, freight of property, when laden on board. But this is certainly not the necessary or most probable meaning. It may as well mean, freight of property " expected or intended to be put on board," or " agreed to be put on board," as in case of a charter party. By the defendants' construction, both rights to freight could not co-exist, because no goods could be laden on board at Palermo, till after the voyage from Cadiz to Palermo had terminated. But we think it manifest from the valuation of the whole freight, as well from Cadiz to Palermo as from Palermo to New York, that it was regarded by the parties as one entire subject of insurance, and that it was intended to cover all the freight of both voyages. And this is perfectly consistent

with the words of the policy, if we supply the ellipsis, which must be supplied with something, with the words, " to be laden on board," making it apply both to Cadiz and Palermo ; which is quite as consistent with the general purpose, and more consistent with the whole effect of the contract, than the words, " when laden on board," so as to prevent it from taking effect until the goods should be actually laden, or begun to be laden on board.

It may be said that the words " on board," have, upon this supposition, no effect, and mean the same as freight of ship Herald. We think the meaning is nearly or wholly the same.

Such being the intent of the contract, the freight expected on the voyage home might amount to something over $ 2,500, and the freight of the intermediate voyage appears to have been considered very uncertain. We therefore do not think the valuation was so great as to raise a suspicion of fraud. If the whole subject matter, intended to be included in the valuation, was not put at risk, then the policy must of necessity be opened, and it would not be consistent with the contract to permit the assured to recover the whole valuation. *Forbes* v. *Aspinall*, 13 East, 325. *Wolcott* v. *Eagle Ins. Co.* 4 Pick. 429.

In the present case, the whole subject intended to be covered by the valuation, viz. the freight to be earned between Cadiz and Palermo, and between Palermo and New York, were put at risk. Had the eight coils of cordage been carried safely from Cadiz to Palermo, and no loss occurred on the freight home, the whole premium would have been due to the underwriters, and they would have been exempted from all loss. This was what they insured. It was lost ; and we think they were liable according to the value agreed on by the policy. We think the assured cannot be in a worse condition than if their vessel had sailed in ballast from Cadiz to Palermo, to take on board a cargo in pursuance of a contract previously entered into to take a cargo from thence to New York, which would entitle the plaintiff to recover in case of loss.